**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | | |
|---|---|---|
| **LANCE R. WILSON AND DENISE D. WILSON** § § § § | | **CIVIL ACTION NO:** |
| | | **2:20-cv-08960** |
| *Plaintiffs* § | | |
| v. § § | | |
| **THOR MOTOR COACH, INC. CAMPING WORLD RV SALES, LLC AND U.S. BANK, N.A.** § § § § § § | | |
| *Defendants* § | | **JURY TRIAL REQUESTED** |

**COMPLAINT**

**I.   Parties**

1.  Plaintiffs, LANCE R. WILSON and DENISE D. WILSON, are individuals that are now and have been at all times a citizens of the State of California.

2.  Defendant, THOR MOTOR COACH, INC., hereinafter "THOR," is an Indiana corporation authorized to do and doing business in the State of Indiana with its principal place of business located at 900 CR 1, PO Box 3030, Elkhart, in, 46515, USA and is a citizen of the State of California and a warrantor of a Recreational Vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

THOR agent for service of process is C T Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201-4234.

3.  Defendant, CAMPING WORLD RV SALES, LLC, hereinafter "CAMPING WORLD," is a Minnesota limited liability company and a citizen of the State of Minnesota.

CAMPING WORLD is wholly owned by FreedomRoads Operations Company, LLC. FreedomRoads Operations Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads, LLC. FreedomRoads, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads Intermediate Holdco, LLC. FreedomRoads Intermediate Holdco, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by ITM Holding Company #2, LLC. ITM Holding Company #2, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by ITM Holding Company, LLC. ITM Holding Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads Holding Company, LLC. FreedomRoads Holding Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by CWGS Group, LLC.

CWGS Group, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by CWGS Enterprises, LLC. CWGS Enterprises, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is owned by: (a) CWGS Holding, LLC; (b) CVRV Acquisition, LLC; (c) CWH BR, LLC; (d) Camping World Holdings, Inc.; (e) and certain individuals, none of which are known citizens of the State of Texas by the Plaintiff. CWGS Holding, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by ML Acquisition Company, LLC. ML Acquisition Company, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by : (i) AGI Holding Corp.; and (ii) ML RV Group, LLC.  AGI Holding Corp. is a Delaware limited liability company and a citizen of the State of Delaware and is not a publicly held corporation and no

publicly held corporation owns 10 percent or more of its stock.

ML RV Group, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by (1) Marcus Lemon who is a citizen of the State of Illinois; (2) CVRV Acquisition is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Crestview Partners II GP, LP. Crestview Partners II GP, LP is a Delaware limited liability partnership and a citizen of the State of Delaware. The identities of the limited partners of Crestview Partners II, LP are confidential; however, none of the limited partners are known citizens of the State of Texas by the Plaintiff; (3) CWH BR, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Camping World Holdings, Inc. Camping World Holdings, Inc. is a publicly traded Delaware corporation with its principal place of business in Lincolnshire, Illinois. All publicly held companies, if any, that own ten percent (10%) or more of the named party's stock: Camping World RV Sales, LLC is not a publicly held corporation; and (4) Camping World Holdings, Inc. is a Delaware publicly traded corporation, and owns greater than 10 percent of the membership interest in CWGS Enterprises, LLC, which is an indirect parent company of Camping World RV Sales, LLC.

CAMPING WORLD is authorized to do and doing business in the State of Texas whose agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge LA 70816.

4.	Defendant, U.S. BANK, N.A., hereinafter "U.S. BANK, N.A.," is a California financial institution authorized to do and doing business in the State of Texas whose agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II. Jurisdiction

5. This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III. Venue

6. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

7. All conditions precedents have been performed or have occurred.

## V. Facts

### A. The Transaction

8. On or about January 31, 2020, Plaintiffs purchased a new 2019 THOR A.C.E. bearing VIN 1F66F5DYUKOA00286, hereinafter "A.C.E.," from CAMPING WORLD.

The "A.C.E." was purchased primarily for Plaintiffs' personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

9. The sales price of the A.C.E. was $88,988.00. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See **_Hughes v. Segal Enterprises, Inc._, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); _Chariton Vet Supply, Inc. v. Moberly Motors Co._, 2:08CV47MLM, 2009 WL**

**1011500 (E.D. Mo. Apr. 15, 2009).**

10. The contract of sale was assigned to Defendant, U.S. BANK, N.A.. The contract which was assigned contained the following provision:

> "NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

### B. Implied Warranties

11. As a result of the sale of the A.C.E. by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the A.C.E. would pass without objection in the trade under the contract description, and that the A.C.E. was fit for the ordinary purpose for which such motor vehicles are purchased.

12. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

13. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the A.C.E., occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the A.C.E. had, in fact, repaired the defects.

14. Plaintiffs' purchase of the A.C.E. was accompanied by express warranties offered by

the Defendants, THOR and CAMPING WORLD, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the A.C.E..

15. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the THOR's warranty booklet and owners manual. Also, the Defendant, THOR, continued to agree to extended its express warranty with the Plaintiffs to cover defects that were discovered and tendered for repairs during the original factory warranty.

### D. Actionable Conduct

16. In fact, when delivered, the A.C.E. was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiffs's own words:

> **"DEFECTIVE CLAMP CAME LOOSE WHILE I DRIVING CAUSING THE HYDRAULIC LINES TO CATCH THE A.C.E. ON FIRE."**

17. Since purchase, Plaintiffs have returned their A.C.E. to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the A.C.E., the more significant and dangerous defects were not repaired. Defendants failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the A.C.E., continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

18. The defects experienced by Plaintiffs with the A.C.E. substantially impaired its use,

value and safety.

19. Plaintiffs directly notified the Defendants of the defective conditions of the A.C.E. on numerous occasions. Plaintiffs notified Defendants, THOR and CAMPING WORLD, that they wanted a rescission of the sale of the A.C.E. but the Defendants have failed and refused to buy back Plaintiffs' defective A.C.E..

## VI. Causes of Action

**COUNT 1: VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

20. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

21. The A.C.E. is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

22. Plaintiffs are "purchasers" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

23. Defendant, THOR, is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

24. The sale of the vehicle to Plaintiffs was accompanied by an express written warranty.

25. The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the vehicle and or can cause serious bodily injury or death.

26. Plaintiffs brought their A.C.E. to CAMPING WORLD, an authorized repair facility, for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

27. Defendants have not repaired the nonconformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

28. Further, the sale of the A.C.E. to Plaintiffs was accompanied by implied warranties that the vehicle was merchantable and fit for a particular use.

29. Defendants have breached the implied warranties of merchantability and fitness for a particular use because the vehicle when sold would not pass without objection in the trade.

30. Despite their breach of the express and implied warranties, Defendants have refused Plaintiffs' demand for a refund or replacement.

31. By failure of Defendants to remedy the defects as alleged above, or to issue a refund or replacement, Defendants are in breach of their obligations under the Song-Beverly Consumer Warranty Act.

32. Defendants' continuing breach of their obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants and each of them are liable to Plaintiff for civil penalties in an amount as set forth below.

33. Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

34.    Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

35.    Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

36.    Defendants, THOR and CAMPING WORLD, are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

37.    The A.C.E. is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

38.    The express warranties more fully described herein above pertaining to the A.C.E., is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

39.    The actions of the Defendants as herein above described, in failing to tender the A.C.E. to Plaintiffs free of defects and/or refusing to repair and/or replace the defective A.C.E. tendered to Plaintiffs constitute a breach of the written and implied warranties covering the A.C.E. and hence a violation of the Magnuson-Moss Warranty Act.

40.    Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

41.    As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiffs have been damaged herein above in an amount in excess of $350,000.00 according to proof at trial.

41. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3: LENDER LIABILITY**

42. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

43. Plaintiffs are indebted to U.S. BANK, N.A. as a result of their purchase of the A.C.E.. Plaintiffs are entitled to assert all claims and defenses stated above against U.S. BANK, N.A. as a defense to the debt.

**COUNT 4:   BREACH OF EXPRESS WARRANTIES**

44. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

45. Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' A.C.E. or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants issued an expressed written warranty which covered the A.C.E. and warranted that the A.C.E., was free of defects in materials and work quality at the time of delivery.

46. As alleged above, the Defendants breached its warranties by offering for sale and

selling as safe to Plaintiffs a A.C.E. that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

47. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

48. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5: BREACH OF IMPLIED WARRANTIES**

49. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

50. The Defendants impliedly warranted that Plaintiffs' A.C.E. which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

51. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the A.C.E., had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

52. Because of the defects, Plaintiffs' A.C.E. is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

53. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6: NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

54. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

55. The Defendants had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

56. The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

    a. Failure to design and manufacture a A.C.E. that did not harbor the defects alleged herein;

    b. Failure to notify Plaintiffs of the dangerous and defective condition of the A.C.E. when Defendants knew or should have known of the dangerous and defective condition;

    c. Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

    d. Failure to repair the A.C.E. in accordance with the express and implied warranties.

57. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;

loss of use; damages; and attorney fees.

### COUNT 7: BREACH OF CONTRACT

58. Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

59. Plaintiffs would show that the actions and/or omissions of Defendants described herein above constitute breach of the sales contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

60. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 8: NEGLIGENT REPAIR

61. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

62. On numerous occasions, Plaintiffs delivered the A.C.E. to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

63. On each occasion that Plaintiffs returned the A.C.E. for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendants attempted repairs of the A.C.E. pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiffs to perform repairs on the A.C.E. in a good and workmanlike manner within a reasonable time. These Defendants breached this duty.

64. Defendants' attempted repairs of Plaintiffs' A.C.E. were done so negligently, carelessly,

and recklessly as to substantially impair the A.C.E. 's use, value, and safety in its operation and use. At no repair attempt was Plaintiffs' A.C.E. fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendants' attempts at repair. Nonetheless, each time Plaintiffs picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

65. As a direct and proximate result of Defendants' negligent failure to repair the A.C.E. within a reasonable time or within a reasonable number of attempts, Plaintiffs were forced to drive a defective and dangerous A.C.E. in conducting their daily activities. As a further direct and proximate result of Defendants' failure to repair the A.C.E. in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the A.C.E. in for further repair attempts and to leave the A.C.E. for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

66. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

### VII. Economic and Actual Damages

67. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.. Out of pocket expenses, including but not limited to the money paid towards

the note securing the vehicle;

    b.    Loss of use;

    c.    Loss of the "benefit of the bargain";

    d.    Diminished or reduced market value; and

    e.    Costs of repairs.

### VIII.  Multiple Damages

68. The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the *falsity, deception, or unfairness* of such acts, practices, and/or omissions.

69. Plaintiffs further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

70. Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

### IX.  Request for Rescission

71. Plaintiffs seek the remedy of rescission of the sales contract which is requested in the following paragraph.

72. Plaintiffs revoke their acceptance of the A.C.E. for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendants that the defects in A.C.E. would be repaired. Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the

court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above. Plaintiffs also seeks cancellation of the debt and now offers to return the A.C.E. to Defendants.

### X. Attorney Fees and Costs

73. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### XI. Prayer

74. For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b.    Rescinding the sale of the 2019 THOR A.C.E. bearing VIN 1F66F5DYUKOA00286 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.    Any diminution in value of the A.C.E., attributable to the defects;

    f.    Past and future economic losses;

    g.    Prejudgment and post-judgment interest;

h. Damages for loss of use of vehicle;

i. Civil Penalties and/or Punitive damages;

j. Damages for mental anguish;

k. Attorney fees;

l. Costs of suit, expert fees and litigation expenses; and

m All other relief this Honorable Court deems appropriate.

### XII. Demand for Jury Trial

75. Plaintiffs hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS